## Scully *versus* The Commonwealth.

It is a violation of the Act 22d April 1794, to pilot a canal-boat laden with coal, upon a part of the Schuylkill Navigation, on the Lord's day, in discharge of the party's ordinary occupation.

The canal company is not required by the Act 11th April 1845, to stop travel upon their works, on the Lord's day, although it relieves them from any penalty for so doing.

There may be lawful travel through the works of the company, on Sunday, and they have no right to decide upon its legality; even public officers cannot stop it, unless attended with a breach of the peace; but this does not exempt the offender from the penalty prescribed by the Act of 1794.

A *certiorari* to remove a summary conviction by a justice of the peace, ought not to issue out of this court without a special *allocatur*.

CERTIORARI to a Justice of the Peace of *Montgomery county*.

This was an information before J. S. Steeple, a justice of the peace, against John Scully, for having performed worldly employment on the Lord's day, commonly called Sunday, contrary to the provisions of the Act 22d April 1794.

The defendant was convicted by the justice, and the following record thereof was made:—

"Be it remembered, that, on the 5th day of December, A. D. 1859, John Scully (pilot) is convicted before me, J. S. Steeple, one of our justices of the peace in and for the county of Montgomery, of having, within aforesaid county, performed worldly employment upon the Lord's day, commonly called Sunday (being the 4th day of December, A. D. 1859), by piloting canal-boats laden with coal upon the Schuylkill Canal, and I do adjudge him to forfeit for the same the sum of four dollars and costs of prosecution; and in default of the payment of the same, and goods and chattels not being found whereon to levy the same, then the said John Scully to be committed to the Montgomery county prison for the period of six days, according to the Act of Assembly of April 22d 1794. The act of worldly employment done by said John Scully, for which I have adjudged that he pay the penalty aforesaid, consists in his having acted as pilot on board of a canal-boat loaded with coal, on Sunday, the 4th day of December, A. D. 1859, when such boat was passing through the pool of the Flat Rock Dam of the Schuylkill Navigation—such act being in the discharge of said defendant's ordinary or usual occupation as a pilot on the said navigation—all loaded boats being placed (for a certain fee or compensation) in charge of pilots when passing through said pool; and not a work of necessity or charity."

The defendant thereupon sued out this writ, and assigned the same for error; and it was agreed by the counsel that the follow-

[Scully *v.* The Commonwealth.]

ing facts should be considered, on the argument, as having been proved before the justice :—

1. That John Scully, the defendant below, was not in the employ of the Schuylkill Navigation Company, but was employed and paid solely by the captains of the boats on which he acted as pilot.

2. That the Schuylkill Navigation Company, in the exercise of the discretion confided to them by the Act of 11th April 1845, had directed their locks to be attended on Sundays, "for the purpose of expediting or aiding the passage of boats along the same," from the 20th of November, 1859, until the close of the boating season of that year; that in the exercise of the same discretion, they had caused their locks to be closed on all the preceding Sundays of that year; and that from the period of the completion of the work, in 1825, until 1855, the navigation had been kept open and used for the passage of loaded boats, on all Sundays, during the boating seasons of those years.

*W. M. Tilghman,* for the plaintiff in error.

*H. W. Bonsall,* for the Commonwealth.

The opinion of the court was delivered by

LOWRIE, C. J.—The defendant below has been convicted of worldly employment on the Lord's day, in piloting a canal-boat laden with coal upon a part of the Schuylkill navigation, in discharge of his ordinary occupation, the said work not being work of necessity or charity; and we have no doubt that he was rightly convicted.

There is nothing in the laws relating to the Schuylkill Navigation Company that authorizes such work, and they have no authority, by any regulations of theirs, either to sanction or to prohibit it: 14 *Mees. & W.* 76. We had no thought of saying, in Murray *v.* The Commonwealth, 12 *Harris* 270, that boating on those works on Sunday was legalized by the Act of 11th April 1845 : we think we have expressed the contrary. That law was made to regulate the conduct of the company, and not of navigators. Until then, the company was bound to keep its locks open on Sunday even for unlawful travel, but that law exempted them from this obligation, and thus allowed the restriction, rather than the enlargement, of the right of travel.

Nobody supposes that road, turnpike, or bridge gates can be closed by their companies on the Lord's day : they must be kept open for travel. Yet the travel is not therefore lawful, because the keeping of the gates is. And so it is with navigation companies. They must keep their gates open, because there may be lawful travel through them, and because they have no authority to

[Scully v. The Commonwealth.]

decide that any travel is unlawful, or to stop it. Even public officers cannot stop it, unless attended by a breach of the peace. Time was, when travel, because of necessity or charity, had to be allowed beforehand by license from a public officer; but it is not so now.

In The Navigation Company v. Pilling, 14 *Mees. & W.* 76, it is held, that a company cannot stop even unlawful travel on their works, by any regulations in protection of the Lord's day. And we maintained the distinction between the law or duty of the boatman, and the law or duty of the keeper of the highway, in Mohney v. Cook, 2 *Casey* 342, when we decided, that even unlawful boating is protected against obstructions of navigation. Boatmen are not answerable to the navigation company, but only to the state, by its magistrate, for breaches of the Sabbath; and they are answerable nowhere beyond the penalty of the law. Before the Act of 1845, the company was bound to let them pass at their own risk of this penalty. That act may now allow the company to stop them, but it does not require this to be done; and surely this is not giving the company authority to dispense with the Sunday laws on their works.

It is not possible to allow the many breaches of the Sunday laws, which have been overlooked for many years, to be set up as a ground of interpretation of a law which had been well settled long before this navigation had any existence.

We must take occasion to say here, that this writ ought not to have been issued without a special allowance. It has been done several times before in similar cases, and therefore we overlook the error in this case. The Common Pleas has jurisdiction over these summary convictions, by *certiorari*, and we cannot allow them to be brought here directly, unless on good cause first shown, consisting in some peculiarity in the nature of the case, or in circumstances that may affect its trial.

The conviction is affirmed, and the record remitted to the justice of the peace for execution.

WOODWARD, J., dissented, on the ground that the question was virtually ruled in Murray v. Commonwealth.